*384 The opinion of the Court was delivered by
Johnston, Ch.
Without deeming it necessary to consider at large the statutes referred to in the decree, or the construction put upon them by the Chancellor, we are of opinion that the infant intestate had, at his death, a residence in Abbeville, sufficient, within the meaning of the statute law, to confer the grant of administration upon the Ordinary of that district.
His original domicil, or residence, in Edgefield, had been broken up by the sale of the premises ; and it does not appear that he ever acquired any other in that district, as a substitute. He does not appear ever to have been domesticated with his guardian. And, although it is a principle that the domicil of origin, as a general right, continues until some new domicil, or residence, is acquired, yet we find that this infant was permitted to establish a residence at the house of his step-mother, in Ab-beville, and to retain it for several years. More than this, he was allowed to enter into pursuits of a local character, in which he was, not occasionally, but fixedly — engaged; and in the prosecution of which he died.
But if this were not so, the grant of administration by the Ordinary of Abbeville, which preceded that made by the Ordinary of Edgefield, was, as the Chancellor has properly ruled, such a judgment as carries the .right, until vacated and annulled. This judicial officer having a general cognizance of questions relating to the right of administration — and, therefore, being legally competent to determine them — must, necessarily, be clothed with authority to consider and decide the sufficiency of the evidence presented to him for establishing the facts from which the right arises. The judgment rendered by him must be conclusive of the facts necessary to sustain it, until it is reversed. It cannot be impeached collaterally : and can only be set aside by a direct proceeding.
There was, therefore, no room for the second grant of administration in a different district. A second grant is null until the first grant is recalled. The Ordinary of Edgefield could not revoke the letters granted by the Ordinary of Abbeville: *385 and until they were revoked, he had no authority to grant other letters. The authority conferred by letters of administration is a general authority operating throughout the State. There can be but one administration. And the conferring of the office, with the authority appertaining to it, exhausts the whole subject, and leaves nothing to be done, of like kind, until the authority conferred has been revoked. It would be highly pernicious if such a thing could exist as two administrations going on at the same time. If there can be two, there can be as many as there are districts in the State. How perplexing this would be to creditors, or others having claims on the estate, or liable to claims by it; and how impossible it would be to draw all these administrations to one final result, can scarcely be Imagined.
But a point has been raised, on this appeal, which does not appear to have been suggested or argued on the circuit. We have considered it, however; and there seems to be nothing in it which should vary the decree.
It is said in the 2nd ground of appeal, that the intestate having left no lawful debts, or charges, subsisting against his estate, the administrator has no right to maintain a bill against the defendant — who is the guardian of the sole distributee — to take the assets out of his hands.
Certainly, if it appeared by the pleadings that there was no pretence of debts, as in Thompson vs. Buckner,(a) the Court would do no such idle thing'as to decree that he who is entitled to the estate as distributee should deliver it over to the administrator who has no right, in such case, to the possession of it, except for the purpose of paying creditors. Therefore, no such bill could be sustained. But in this case, there is not only an averment of debts, but there was at the hearing a prima facie shewing of their existence. Surely this was sufficient. All that could be required of the administrator was to shew that there existed claims, which appeared to be presented in good faith. It could not be expected that the administrator should *386 go further, and take upon himself the duty of the creditors, of proving the validity of their claims, — in opposition to his duty, which was not to substantiate such demands, but to offer all reasonable and legal opposition to their allowance.
But, then the case was likened to that of Marsh vs. Nail(a).
The intestate died in his minority; and it was contended that he could not have contracted any debts; and, therefore, the claims presented were to be regarded as nullities. When a Court undertakes to distribute an estate, or to sanction a distribution of it which has been made — as in Marsh vs. Nail, on the ground that no debts can possibly exist against it, it does a very strong act. It is impossible to say with positive certainty that an infant has not, at his death, left debts behind him. It cannot be affirmed with certainty, that it was perfectly impossible for him, in his lifetime, to have come, at some time, into circumstances, where legal obligations might attach to him. An infant is liable for necessaries ; and if he contracts for them, he is liable under his contract. His estate may be liable for the expenses of his last illness, and for his sepulture. It is certainly liable for arrearages of taxes; and may be for other public claims. The regular way is, certainly, to ascertain whether debts exist, and their amount, through the channel of an administration. It is the best way : and departures from it are not to be encouraged — though, after considerable lapse of time, during all which no creditor has appeared to claim administration, or compel the next of kin to take it — as a means of getting payment of his demands — a departure may be tolerated, and the Court may venture, as in Marsh vs. Nail, to conclude that no debts exist. But as I have said, such a conclusion, or any course of procedure deduced from it, should bo adopted with great caution. In this case, the plaintiff has not permitted great space of time to elapse, but has proceeded in a regular way, within a short period after the intestate’s death, to give a fair opportunity to establish claims against his estate; and creditors have appeared and made regular claims. It would, under *387 such circumstances, be inexcusable on the part of the Court, to shuffle the creditors out of the way, and hasten the distribution, by adopting an inflexible conclusion that there exists no possible chance of fair and legal demands.
It is said that the defendant was guardian of the intestate; and that whatever liabilities could have arisen for supplies furnished the ward, were good charges against the guardian, and not against the ward ; and consequently the estate of the latter can not be chargeable with them.
I take the law to be, that the guardian is not liable, personally, except for contracts made by himself. The ward — and of consequence the ward’s estate — is liable for his own contracts, accordingly as they are, or are not, of that character, and founded on those considerations, which the law upholds.
The ward can only bind the guardian, (as a son can only bind a father,) as any third party might, viz., as agent: though it is not doubted that a contract may be inferred against a guardian, or father, from cireumstances(a).
An infant’s contracts are not all necessarily void. Some of them only are so — mostly depending on the form of the contract. Others of them are void until confirmed — not absolutely void. Others of them are good, unless avoided — purely voidable. Whether the exemptions of infancy constitute a personal privilege, which no other person can urge after his death, it is not necessary to decide. On all the infant’s own personal contracts, the action is brought against-the infant himself, though he is to be defended by guardian(b.)
From this view of the law, it follows that claims may be established against the estate of the intestate.
It is ordered that the decree be affirmed, and the appeal dismissed.
DuNKtN, Dargan and Wardlaw, CC., concurred.

Appeal dismissed.

 Riley Eq. Cases. 33.

 Rich. Eq, Cases. 115.

 See Browne on Actions at Law, Chap. 4. sec. 26, page 287, and notes r, s, u, x, y.

h)See Browne ut Supra, p. 291; and see notes d, e, f, g, h.